SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:24-cr-00273-SI** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **DAMIEN SCOTT HENSLEY,** | |
| **Defendant.** | |

The government asks the Court to impose a sentence of 132 months' imprisonment, to be followed by an eight-year term of supervised release. The defendant, a Career Offender under the U.S. Sentencing Guidelines, was a long-time methamphetamine dealer operating in the greater Salem, Oregon area, a proclivity that resulted in him being indicted in federal court for two separate cases involving the possession with intent to distribute methamphetamine. Both of those cases carried five-year mandatory minimum sentences. His second federal case came following his arrest almost a year after he absconded from pretrial supervision on his first pending federal case.

///

Despite lengthy prior state prison sentences that followed previous drug distribution convictions and a pending federal case, he was not deterred from selling methamphetamine. Based upon his prior serious felony drug trafficking offense convictions he also became eligible for a 10-year mandatory minimum sentence in both of his pending federal cases. As a Career Offender the U.S. Sentencing Guidelines suggest an initial advisory sentencing range of 262 to 327 months' imprisonment. Such a sentence however does not account for the defendant's full history and the entire path he traveled prior to arriving in state court. Both the U.S. Probation Office and defendant have urged the Court to impose a lesser sentence.

Given the nature of the case; defendant's advisory sentencing guidelines as a Career Offender; his prior criminal history; the societal harm caused by the methamphetamine he dealt; the defendant's absconding from pretrial supervision; and, the defendant's tragic personal history and characteristics, coupled with long-standing drug addiction and some mental health issues, the government believes the requested sentence is both reasonable, justified, and strikes an appropriate balance after an evaluation of the 3553(a) sentencing factors.

**A. Summary of Proceedings.**

On November 20, 2025, in Case No. 3:24-cr-00273-SI, defendant pled guilty to Count 1 of the Indictment which charged him with the felony crime of Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B). At the time of his change of plea, the defendant also affirmed that he had previously been convicted of a "serious drug felony," as defined in 21 U.S.C. § 802(57) and as alleged by the government in the Information that was filed pursuant to 21 U.S.C. § 851 (the 851 enhancement), and thus he was subject to the enhanced penalties outlined in 21 U.S.C. § 841(b)(1)(B). Accordingly, the maximum sentence the Court may impose is a term of life imprisonment, a mandatory minimum

term of 10-years imprisonment, a fine of $8,000,000, and at least eight years of supervised release. The count of conviction carries a $100 fee assessment.

A Presentence Report (PSR) has been completed. The government believes that the facts underlying the defendant's count of conviction (PSR ¶¶ 21 - 28), his Sentencing Guideline calculations (PSR ¶¶ 32 – 34, 37 - 46), and his Criminal History/Criminal Conduct (PSR ¶¶ 49 - 66) are accurately outlined in both the PSR and plea agreement.

In his plea agreement defendant admitted that:

> [O]n or about June 12, 2024, within the District of Oregon, he possessed approximately 110 grams of a mixture and substance containing methamphetamine, that he intended to distribute to other people. Defendant knew it was methamphetamine. Methamphetamine is a Schedule II controlled substance. The defendant was also in possession of a loaded firearm, a scale, and drug packaging materials. Trained law enforcement investigators would also testify that the amount of methamphetamine defendant possessed indicated that it was possessed for purposes of further distribution.
>
> Defendant also admits that, at the time he committed this offense, he had previously been convicted of a serious drug felony which had become final prior to commission of the offense alleged and for which he received a sentence of more than 12 months' imprisonment and that his release from the term of imprisonment was within 15 years of the commencement of the instant offense.

Plea Agreement ¶ 5.

The defendant has a second pending federal case that will be dismissed at the time of sentencing. Defendant's other case, Case No. 3:22-cr-00215-SI, involved allegations that on June 2, 2022, here within the District of Oregon, he was arrested and inside his vehicle law enforcement investigators found approximately 241 grams of a mixture and substance containing methamphetamine, that he intended to distribute to other people, a firearm, and eight suspected improvised explosive devices. Defendant was released to pretrial supervision on his initial

federal case and on July 25, 2023, he failed to appear for a court hearing involving allegations he had violated his pretrial release conditions. A warrant was issued for his arrest. For almost a year he was on abscond status until he was arrested by Salem Police Officers on June 12, 2024, in what became his second case.

**B. Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)). "All sentencing proceedings are to begin by determining the applicable Guideline range." *Id*.

**Base Offense Level**

The parties agree that defendant's relevant conduct, pursuant to USSG §§ 1B1.3 and 2D1.1(a), is between 200 and 350 grams of a mixture and substance containing methamphetamine and results in an initial **Base Offense Level of 26**. In total, in both of defendant's pending cases, Investigators seized approximately 351 gross grams of methamphetamine from the defendant which was weighed within the bags it was found. Plea Agreement ¶ 7. Given that the methamphetamine was weighed within its packaging materials and the packaging materials should not be included in determining the Base Offense Level in this case, the parties agree that the appropriate Base Offense Level for sentencing purposes is 26. *Id.*

The Probation Office, however, determined defendant's Base Offense level by only using the amount of methamphetamine seized in his June 2024, case. PSR ¶ 37. By excluding the amount of methamphetamine seized in the prior 2022 case, the Probation Office does not

fully encompass the full scope of defendant's relevant conduct in determining an initial Base Offense level. The U.S. Sentencing Guidelines define relevant conduct as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." USSG § 1B1.3(a)(1)(A). It is meant to include "the range of conduct that is relevant to determining the applicable offense level." USSG §1B1.3, comment. (backg'd.); *see also Witte v. United States,* 515 U.S. 389, 403 (1995) (relevant conduct is a "sentencing enhancement regime[] evincing the judgment that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity"). Here, the methamphetamine seized in both cases is relevant to determining the full scope of defendant's criminal conduct. We ask the Court to find defendant's initial Base Offense level is 26. As a practical matter the initial Base Offense level becomes overtaken by the Career Offender provisions, discussed below.

**Possession of a Firearm**

Because a dangerous weapon was possessed in connection with the offense, pursuant to USSG § 2D1.1(b)(1), the parties agree that defendant's offense level should be increased by two-levels. PSR ¶ 38, Plea Agreement ¶ 8. Under the Sentencing Guidelines the dangerous weapon/firearm enhancement, also referred to as the "gun bump," is designed to reflect "the increased danger of violence when drug traffickers possess weapons" and it "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1, comment. (n.11(A)) (emphasis added). Here, the gun was present while defendant was engaged in drug trafficking and the "gun bump" enhancement should apply.

///

///

**Career Offender**

Because defendant qualifies as a "Career Offender," pursuant to USSG § 4B1.1(b)(1) based upon his prior drug distribution convictions in state court and the filing of the 851 enhancement, his advisory offense level is increased to 37. PSR ¶ 43, Plea Agreement ¶ 10. Without the 851 enhancement his Career Offender guidelines would have been 34. USSG § 4B1.1(b)(2)

**Acceptance of Responsibility**

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to USSG § 3E1.1, the parties ask that the Court grant the defendant a three-level reduction in his offense level. PSR ¶¶ 44 - 45, Plea Agreement ¶ 12.

**Obstruction**

The government concurs that the Obstruction of Justice enhancement does not apply to this count of conviction. PSR ¶ 32 – 33, 41.

**Advisory Sentencing Guideline Range**

Prior to any additional departures or variances, the defendant's initial Adjusted Offense Level is 34. With a Criminal History Category of VI (PSR ¶ 59 - 60), defendant's initial advisory sentencing guideline range is 262 to 327 months' imprisonment.

**C. Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a), we ask the Court to impose a sentence of 132 months' imprisonment, to be followed by an eight-year term of supervised release. The mandatory minimum sentence required by law is 120 months' imprisonment. The government believes the approximately one-year the defendant had absconded from U.S. Pretrial Supervision should be added onto the defendant's otherwise mandatory minimum sentence.

Defendant's conviction is based on his possession with intent to distribute methamphetamine. Methamphetamine is dangerous, destructive, and deadly. Within the community, inside our courtrooms, and inside our jails we consistently see the reminders of just how corrosive methamphetamine is on society. For years this defendant help spread that cancer. According to law enforcement:

> Fentanyl and methamphetamine remain the primary drug threats, affecting community livability and contributing to drug-related overdose deaths and criminal activity, including crimes against persons and property in the HIDTA region. In 2023, fentanyl was linked to 75.9% of overdose deaths in Oregon and 51% in Idaho. Methamphetamine was present in 63.5% of Oregon's overdose deaths and 38% of Idaho's. Together, these two substances accounted for 41.3% of overdose fatalities in both states.

Oregon-Idaho High Intensity Drug Trafficking Area (HIDTA) 2026 Threat Assessment, 2025, at 5 (https://oridhidta.org/reports).

The government recognizes the tragic and heart breaking history the defendant has endured, a rocky path that started in childhood. His Adverse Childhood Experiences (ACEs) score is 8 of 10, indicating a childhood filled with abuse, violence, tragedy, and chaos. He has long abused methamphetamine. He has struggled with mental health issues. Such a background does not preordain someone to the history of criminal activity the defendant has engaged in, many people have gone through struggles, overcome them, and done very well. However, reading the defendant's personal history and characteristics does help us understand how the defendant may have gotten onto the destructive path he did – a path he never really seemed to get off. Every defendant is different and their cases, while they may have similarities, are still unique. The defendant's repeated distribution of methamphetamine and possession of firearms warrants a lengthy sentence of imprisonment. What he was doing was dangerous and deadly. Furthermore, his criminal history is lengthy and abysmal. Even without the Career Offender

designation, the defendant still ends up in the highest Criminal History Category of VI. Even in prison he has not done well. Furthermore, while on supervision and given the chance to turn things around, the defendant eventually absconded from supervision. Determining the proper sentence in this case has proven vexing. However, at some point the length of a sentence becomes enough to achieve the goals outlined within 18 U.S.C. § 3553(a).

Accordingly, after a lengthy consideration of the defendant's prior criminal history, the sentences received in those prior state cases, his absconding of supervision, his two pending cases, how defendant sought to resolve his federal case following his arrest, and after evaluating the evidence and the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 132 months' imprisonment is reasonable. We ask the Court to impose it, to be followed by an eight-year term of supervised release.

The ultimate sentence is, however, for the Court to determine.

We also ask that the Court recommend that the defendant participate in the Bureau of Prison's Residential Drug Abuse Program (RDAP). While defendant's possession of a firearm may prevent him from receiving a sentencing reduction from RDAP participation, his successful completion of the program will potentially be a tremendous benefit to him upon his release from prison.

At the time of sentencing the government will ask the Court to dismiss Counts 1, 2, 3, and 4 in Case No. 3:22-cr-00215-SI and Counts 2 and 3 in Case No. 3:24-cr-00273-SI.

There is an appeal waiver.

Dated: August 28, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

/s/ Scott Kerin

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney